UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

DANIEL COLLINS,

       Plaintiff,                             CASE NO. 15-CV-2229

    vs.

                                                      OPINION & ORDER
UNUM LIFE INSURANCE COMPANY        [Resolving Docs. 23, 24]
OF AMERICA,

       Defendant.

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Daniel Collins brings claims under 29 U.S.C. § 1132(a)(1)(B) against Defendant Unum Life Insurance Company of America ("Unum") for wrongful denial of ERISA plan benefits. The parties filed cross-motions for and against upholding Unum's administrative benefits denial decision. For the following reasons, this Court **GRANTS** Defendant Unum's motion to uphold Unum's administrative decision, **DENIES** Plaintiff's motion to reverse the decision, and **DISMISSES** Plaintiff's complaint.

**I. Background**

Before January 6, 2012, Plaintiff Collins worked at Affymetrix. Plaintiff Collins has diabetes. Affymetrix had an employee's insurance plan through Defendant Unum. The plan was governed by ERISA.[1]

The policy covered accidental dismemberment. However, the policy had a coverage exception for dismemberment "caused by, contributed to by, or resulting from . . . disease of the body."[2] The policy did not cover losses after 365 days from the accident.[3] The policy also

---
[1] 29 U.S.C. § 1001 et seq.
[2] Doc. 13-1 at 71.
[3] *Id.* at 66.

Case No. 15-cv-2229
Gwin, J.

delegated discretion and authority to Defendant Unum to process claims under the policy and to interpret the policy.[4]

On January 6, 2012, Plaintiff slipped and fell in the Affymetrix employee parking lot and caught his leg in a sewer grate.[5] Plaintiff fractured his ankle. Over the next few months, Plaintiff had several operations to try to fix the ankle. However, these operations did not work, and Plaintiff eventually developed a Charcot ankle.[6] After the fact, Unum doctors would attribute

---

[4] *Id.* at 84.

[5] *Id.* at 30.

[6] Plaintiff summarizes his medical complications, with references to the Administrative Record, Docs. 13-1 and 13-2, as follows:

> South Pointe [Hospital] noted that [Plaintiff] Collins had an ankle deformity and had suffered a trimalleolar fracture. [Doc. 13-1 at 210–11.] Collins underwent an open reduction and internal fixation [*Id.* at 277.] Multiple x-rays were taken and confirmed that there was evidence of the fracture. [*Id.*] The procedure included a plate with six screws securing Collins's fibular fracture, a long screw securing the fibula to the tibia, and screws securing the medial malleolus. [*Id.*] Collins had multiple follow up visits with South Pointe. [*Id.* at 196–208.]
>
> Collins treated with Dr. Anthony Polito throughout the process. [Doc. 13-2 at 89–135.] Collins first visited Dr. Polito a few days after the initial leg fracture, and there did not appear to be any concerns about infection or otherwise at that time. [*Id.* at 135.] Collins did not appear to have any complaints about the ankle until almost three months after the fracture when he complained to Dr. Polito that his ankle was sore. [*Id.* at 128.] Collins continued to present to Dr. Polito with ankle pain for approximately the next three months, and Dr. Polito concluded that Collins was suffering from pain as a result of the trimalleolar fracture, among other issues. Charcot joint development was first noted by Dr. Polito approximately six months after the fracture. [*Id.* at 488.] Subluxation—misalignment—of the ankle joint was also noted by Dr. Polito. [*Id.* at 112.]
>
> Approximately six months after the fracture and resulting surgery, Collins consulted with Dr. Wissam Khoury for surgery to correct issues that had arisen since the fracture. [*Id.* at 54.] Dr. Khoury noted that Collins had developed a subluxation of the right foot and right leg, which had progressed over time. [*Id.*] Dr. Khoury also noted at this time that Collins was recently diagnosed with Charcot neuroarthropathy. [*Id.*] There were no signs of Charcot breakdown at this time, but there was breakdown of the tibia. [*Id.* at 55.] The possibility of amputation appeared to be a possibility, as Dr. Khoury noted that the impending surgery Collins faced was a limb-salvage procedure. [*Id.* at 56.]
>
> Collins underwent surgery a week after the above-mentioned consult with Dr. Khoury. [*Id.* at 51.] Dr. Khoury performed the surgery. [*Id.*] The pre- and post-operative diagnoses were Charcot neuroarthropathy with ankle deformity, trimalleolar ankle fracture, diabetes mellitus, and failed internal hardware. [*Id.*] The surgery included removal of failed hardware, relocation of the ankle, and application of a new external fixator. [*Id.*]
>
> Dr. Khoury performed another surgery approximately one month after the abovementioned surgery. [*Id.* at 417.] Again, the surgery was a limb-salvage procedure. [*Id.* at 48.] Significant bone loss was noted in the tibia and early Charcot changes were noted. [*Id.* at 50.]
> . . . .
> Approximately one year after the initial fracture and shortly after Dr. Khoury's last [fourth] surgery, Collins underwent a right below-knee amputation, which was performed by Dr. Mark Berkowitz, M.D. [Doc. 13-1 at 166.] Dr. Berkowitz noted that Collins suffered from a

-2-

Case No. 15-cv-2229
Gwin, J.

Plaintiff's ankle complications to his diabetes.[7] On February 8, 2013, Plaintiff Collins had a below-the-knee amputation on the same leg that had been caught in the sewer grate.[8]

On May 20, 2013, Plaintiff applied for benefits under the Unum accidental dismemberment policy.[9] On November 21, 2013, Defendant Unum denied Plaintiff's claim for benefits.[10] Unum explained that it denied Plaintiff's claim because Unum believed that Plaintiff's diabetes partly contributed to the need to amputate Plaintiff's foot.[11] Though Unum did not specifically mention this rationale for denial, Plaintiff's amputation also happened more than

---

chronic right ankle and tibial bone infection after multiple procedures to treat an ankle fracture. [*Id.*]
 Doc. 24 at 5–7 (citations altered for consistency).
[7] Defendant says it had the following evidence when it made its benefits denial decision:
During an initial review of medical records on July 5, 2013, Unum pathologist Kristin Sweeney, M.D., noted that, according to the relevant medical literature, 'diabetics have more complications' with Plaintiff's type of fracture and related surgical treatment ([Doc. 13-1] at 296), and that, during the relevant time period, records characterized Plaintiff's longstanding diabetes as 'difficult to control' (*id.* at 295). At that point, the 'limited available records' prevented Dr. Sweeney from determining the degree to which Plaintiff's diabetes contributed to his later amputation. (*Id.* at 296.) As such, Unum expanded its review to request Plaintiff's primary care records, electrodiagnostic studies, and podiatry records for the prior 10 years, as well as records from St. Vincent Charity Medical Center ("St. Vincent") from 2010 forward. (*Id.* at 298.)
. . . . Records from internist Nitin Govani, M.D. described Plaintiff's diabetes as 'uncontrolled' and noted his 'poor adherence to plan of care' as of October 18, 2011. [Doc. 13-2 at 205.] Office notes dated February 23, May 1 and September 25, 2012 from Plaintiff's podiatrist, Anthony Polito, D.P.M., contained evidence of '[d]iabetic sensory neuropathy' related to Plaintiff's right foot [*Id.* at 96, 127, 131.] Further, a January 11, 2013 assessment from St. Vincent observed '[i]nsulin-dependent diabetes mellitus with neuropathy' and 'Charcot arthropathy secondary to diabetes mellitus on the right ankle, resolving also secondary to a traumatic ankle fracture on the right.' (*See, e.g.*, [*Id.* at 31–35].)
Upon receiving the additional records, Unum referred the claim to pathologist Barbara Golder, M.D., who opined on November 19, 2013, that, without the presence of the underlying diabetes, Plaintiff would not have developed a Charcot joint and suffered the resulting loss from the January 6, 2012 fall alone, and that Plaintiff's diabetes likely also increased his risk of infection, such as his resulting chronic osteomyelitis, which further contributed to the need to amputate. [*Id.* at 325–26.]
Doc. 23 at 5–6 (footnotes omitted, citations altered for consistency).
Unum also had treating physician Dr. Berkowitz's May 14, 2013 form statement. Doc. 13-1 at 16. In response to that form's question, "in your opinion, was the loss [of Plaintiff's right foot] caused in any way by illness or disease?" Dr. Berkowitz circled "No." *Id.*
[8] Doc. 13-1 at 166–68.
[9] *Id.* at 25–30.
[10] Doc. 13-2 at 329–31.
[11] *Id.*

-3-

Case No. 15-cv-2229
Gwin, J.

365 days after Plaintiff's accident. On February 14, 2014, Plaintiff appealed the denial.[12] On February 24, 2014, Unum affirmed its benefits denial.[13]

On September 29, 2015, Plaintiff filed the complaint in this case.[14] On October 20, 2015, Defendants removed the case to federal court.[15]

The parties disputed the standard of review for Unum's ERISA plan benefits denial. On March 30, 2016, this Court held that the arbitrary and capricious standard would apply and that this Court would limit its review to the administrative record.[16]

On May 23, 2016, the parties filed motions with arguments for and against upholding the administrative decision denying benefits.[17] On June 23, the parties filed responding briefs.[18]

## II. Legal Standard

> Section 502(a)(1)(B) of ERISA [29 U.S.C. § 1132(a)(1)(B)] authorizes an individual to bring an action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. Generally, federal courts review a plan administrator's decision to deny benefits de novo. But, where the plan administrator reserves discretionary authority to determine eligibility and construe policy terms, the more deferential arbitrary and capricious standard of review applies.[19]

As explained above, this Court previously held that Unum reserved discretion to administer its accidental dismemberment policy. Therefore, the arbitrary and capricious standard applies to this case.[20]

> The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned

---

[12] *Id.* at 349–50.
[13] *Id.* at 362–65. The Unum affirmation letter mentions the 365-day window as an exception to coverage.
[14] Doc. 1-1.
[15] Doc. 1.
[16] Doc. 22.
[17] Doc. 23; Doc. 24.
[18] Doc. 25; Doc. 26.
[19] *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks and citations omitted).
[20] Doc. 22.

-4-

Case No. 15-cv-2229
Gwin, J.

> explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. The arbitrary and capricious standard requires courts to review the plan provisions and the record evidence and determine if the administrator's decision was "rational." Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious.
> . . .
> A court may consider only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. The court's review is thus limited to the administrative record.[21]

### III. Discussion

Both parties have some argument in favor of their respective positions. However, because Defendant Unum had sufficient record evidence before denying Plaintiff's benefits application, this Court will not overturn Unum's decision.

Defendant Unum reviewed Plaintiff's medical history and noted Plaintiff's long history of diabetes. Defendant noted that Plaintiff poorly controlled his diabetes at certain points.[22] Defendant then found that Plaintiff had diabetes-related issues in his right ankle before and after the January 6, 2013 accident.[23]

After reviewing the medical records, Unum then asked Dr. Golder to review the claim. On November 19, 2013, Dr. Golder opined:

> To a reasonable degree of medical certainty, without the presence of underlying diabetes (or another source of neuropathy), this insured would not have developed a Charcot joint. Further, his course [of treatment] was complicated by the seriousness of the fracture which, despite immediate and appropriate care, did not resolve; he also developed chronic osteomyelitis [bone infection]. Increased risk of infection is also a characteristic of diabetes. It was the failure of treatment and the presence of osteomyelitis that led to the amputation of the foot.
>
> Conversely, this was a serious, debilitating injury and from the record it was clearly the trigger for the development of the Charcot joint as that was not present prior to the injury. To a reasonable degree of medical certainty, but for the ankle

---

[21] *Id.* (internal quotation marks and citations omitted).
[22] Doc. 13-2 at 205.
[23] *Id.* at 96; *id.* at 31.

-5-

Case No. 15-cv-2229
Gwin, J.

> fracture, this insured would not have developed a Charcot joint at this time and might never have. To a reasonable degree of medical certainty *both the underlying illness and the injury were necessary for the development of the joint pathology that led to amputation.*[24]

With the underlying medical records and Dr. Golder's opinion, Defendant Unum had a reasonable basis to conclude that Plaintiff's diabetes "contributed to" Plaintiff's loss, and therefore to deny coverage.

Plaintiff has two main arguments in favor of overturning Unum's administrative decision. However, in light of the deferential arbitrary and capricious standard of review, neither is sufficient to warrant overturning the benefits denial.

First, Plaintiff argues that Unum has a structural bias towards denying claims because Unum is both the claim administrator and payor. Plaintiff also says that Dr. Golder's opinion is not credible because Unum refers cases to doctors likely to decide in favor of Unum.

Structural bias is one factor for this Court to consider in determining whether Unum had a reasonable basis for denying Plaintiff's benefits application. However, Plaintiff does not bring any concrete evidence of actual bias in Dr. Golder's opinion or in Unum's denial decision. Without more than speculation, these arguments are insufficient to warrant overturning Unum's decision in light of the record evidence before Dr. Golder and Unum.[25]

Second, Plaintiff says that Unum failed to account for Plaintiff's treating physician Dr. Berkowitz's contrary opinion on causation. As noted above, on May 14, 2013, Dr. Berkowitz filled out an Unum form titled, "Attending Physician Statement for Accidental

---

[24] *Id.* at 326 (emphasis added).
[25] *Maynard v. Prudential Ins. Co. of Am.*, No. 1:12 CV 3085, 2013 WL 5964461, at *9 (N.D. Ohio Nov. 7, 2013) ("Raising the spectre of a conflict of interest is insufficient for the Court to find the administrator's decision to be arbitrary and capricious. Absent evidence that the administrator's decision was motivated by its dual role, the Court will give only slight weight to the conflict of interest when reviewing the administrator's decision." (citing *Curry v. Eaton Corp.*, 400 F. App'x 51, 58–59 (6th Cir. 2010)).

Case No. 15-cv-2229
Gwin, J.

Dismemberment."[26] In response to the that form's question, "in your opinion, was the loss [of Plaintiff's right foot] caused in any way by illness or disease?" Dr. Berkowitz circled "No."[27]

Plaintiff says this form is some contrary record evidence. However, the evidence is simply a circle over the word "No." Dr. Berkowitz does not explain the basis for this conclusion. To the contrary, Dr. Berkowitz notes on the same form that Plaintiff suffered from Charcot arthropathy, chronic osteomyelitis, and below-knee amputation. In describing "the accident that caused this loss," Dr. Berkowitz said that Plaintiff fell on ice and then developed osteomyelitis, or bone infection.[28]

Dr. Golder addressed this issue in her opinion. Dr. Golder opined that "[i]ncreased risk of infection [osteomyelitis] is also a characteristic of diabetes."[29] This is consistent with the notion that Plaintiff's diabetes contributed to the need to amputate his right foot.

In sum, while Plaintiff points to some contrary evidence, it is not convincing and was addressed to some extent in Dr. Golder's opinion. Plaintiff's arguments are not enough to overturn Unum's benefits denial decision.

Because this Court finds that Unum's decision to deny Plaintiff's benefits application was not arbitrary and capricious based on the policy's bodily disease exclusion, this Court does not reach the question of whether Unum was also justified in denying benefits based on the 365-day exclusion.

---

[26] Doc. 13-1 at 16.
[27] *Id.*
[28] *Id.*
[29] Doc. 13-2 at 326.

-7-

Case No. 15-cv-2229
Gwin, J.

## IV. Conclusion

For the reasons above, this Court **GRANTS** Defendant Unum's motion to uphold Unum's administrative decision, **DENIES** Plaintiff's motion to reverse the decision, and **DISMISSES** Plaintiff's complaint.

IT IS SO ORDERED.

Dated: July 14, 2016            *s/ James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE